USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-24-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x

EDITH WOODS,

                Plaintiff,

        -against-

MARGUERITE ACAMPORA and
CITIGROUP GLOBAL MARKETS INC.,

                Defendants.
-----------------------------------------x

08 Civ. 4854 (PKC)

MEMORANDUM
AND
ORDER

P. KEVIN CASTEL, U.S.D.J.

        Plaintiff Edith Woods, a citizen of Pennsylvania, commenced this diversity action on May 23, 2008 against her sister, defendant Marguerite Acampora, a citizen of New York. The plaintiff is represented by counsel but the defendant proceeds pro se. The action centers around ownership of a bank account. Three claims are asserted: (1) declaratory judgment as to the plaintiff's entitlement to the funds in the account; (2) a claim for an accounting; and (3) a claim for breach of fiduciary duty. Citigroup Global Markets Inc. was named in the action, but has been dismissed. Discovery is closed and plaintiff now moves for partial summary judgment solely on her declaratory judgment claim. She seeks declaratory judgment that she is entitled to (a) one-half of the funds currently in a joint investment account held by Citigroup; and (b) one-half of the $673,000 previously withdrawn by Acampora from this account with interest from the date of each withdrawal (less a credit for the $150,000 previously paid to Woods).

        For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

## LOCAL RULES 56.1 & 56.2

Plaintiff has complied with Local Civil Rule 56.2, requiring a summary judgment movant to explain to a pro se litigant the procedure for opposing a summary judgment motion. Plaintiff also served defendant with a Local Rule 56.1(a) statement. Local Rule 56.1(b) provides that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party; and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Defendant has not complied with Local Rule 56.1(b). Instead, in two affirmations, she has set forth her versions of the facts. Nevertheless, given defendant's pro se status, the Court will consider the merits of defendant's opposition to the motion. As part of Acampora's opposition, I have also considered the excerpts of her deposition submitted by plaintiff.

## BACKGROUND

This Court will examine the facts and review them in the light most favorable to the non-movant, drawing all reasonable inferences in her favor. Edith Woods and Marguerite Acampora maintain an investment account (the "Account") at Citigroup Global Markets Inc. ("Citigroup"), which is held in both of their names as "joint tenants in common" (Pl. 56.1 Stmt. ¶¶ 11, 12; Weiner Aff. Feb. 27, 2009, Exs. 1, 2, 7, 12.) As of July 31, 2008, the Account contained $461,487.27 in cash or cash equivalents. (Pl. 56.1 Stmt. ¶ 19; Weiner Aff. Feb. 27, 2009, Ex. 20.)

2

The proceeds of the Account originated with the sale of 5911 Tyndall Avenue, Bronx, New York (the "Property"). On May 17, 1975, Teresa Acampora, the mother of the two sisters, conveyed title to the Property by deed to her children Ralph Acampora, Marguerite Acampora, and Edith Woods. (Pl. 56.1 Stmt. ¶ 3; Weiner Aff. Feb. 27, 2009, Ex. 3.) On February 15, 2002, Woods and Acampora's brother, Ralph Acampora, conveyed title to his interest in the Property by deed to "Marguerite Acampora, residing at 5911 Tyndall Avenue, Bronx, New York and Edith Woods, residing at 1442 Whitewood Drive, Blue Bell, Pennsylvania." (Pl. 56.1 Stmt. ¶ 4; Weiner Aff. Feb. 27, 2009, Exs. 7, 8.) Acampora filed a Property Owner's Registration Form with the New York City Department of Finance on March 26, 2002, identifying both Acampora and Woods as "owner" of the Property. (Pl. 56.1 Stmt. ¶ 5; Weiner Aff. Feb. 27, 2009, Exs. 7, 8.)

On December 30, 2005, Woods and Acampora conveyed their title to a buyer who purchased the Property for $1,200,000. (Pl. 56.1 Stmt. ¶¶ 6, 7; Weiner Aff. Feb. 27, 2009, Exs. 5, 7, 11.) After closing costs were paid, and equal sums of $10,419.30 paid to Woods and Acampora from the purchase price, a check for $1,080,254.23 was made payable to "Marguerite Acampora and Edith Woods." (Pl. 56.1 Stmt. ¶¶ 8, 10; Weiner Aff. Feb. 27, 2009, Exs. 7, 10, 11.) In or around January 7, 2006, this check was deposited in the Account. The Account Application Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number, signed by Acampora, identifies Acampora and Woods as owners of the Account as "Joint Tenants in Common." (Pl. 56.1 Stmt. ¶¶ 11, 12; Weiner Aff. Feb. 27, 2009, Exs. 1, 2, 7, 12.) Following the Property sale, Acampora reported $600,000, half of the sale's profits, on her federal income tax returns. (Pl. 56.1 Stmt. ¶ 13; Weiner Aff. Feb. 27, 2009, Ex. 7, 19.)

3

On or about April 10, 2006, Citigroup issued a check from the Account made payable to the order of "Ms. Marguerite and Edith A. Woods Ten in Com," in the sum of $373,000. Acampora admits that she endorsed both her own and Woods' name on the check and deposited the check into her own personal checking account. (Pl. 56.1 Stmt. ¶¶ 14, 15; Weiner Aff. Feb. 27, 2009, Exs. 7, 13, 16.) After the fact, Woods became aware of her sister's endorsement of the check and told Citigroup that she had authorized Acampora to sign Woods' name because she did not wish to expose her sister to a charge of forgery. (Weiner Aff. Feb. 27, 2009, Ex 1.) Acampora paid $150,000 of the funds, proceeds of the check, to Woods and used the remainder to pay her personal income taxes and accounting fees. (Pl. 56.1 Stmt. ¶ 15; Weiner Aff. Feb. 27, 2009, Exs. 7.) On March 27, 2007, $300,000 was wired from the Account to Acampora, who used the money to purchase a cooperative apartment in her own name and for her personal use. (Pl. 56.1 Stmt. ¶ 17; Weiner Aff. Feb. 27, 2009, Exs. 16, 17.)

Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under governing law . . . " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law, Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

4

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed.R.Civ.P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed.R.Civ.P. In the absence of any disputed material fact, summary judgment is appropriate. Id.

A court is required to read pro se pleadings "liberally" and interpret them "to raise the strongest arguments that they suggest." Muntaqim v. Coombe, 366 F.3d 102, 105 n. 3 (2d Cir. 2004) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)), vacated on other grounds, 449 F.3d 371 (2d Cir. 2006). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and "a pro se party's 'bald assertion,'

completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Odom v. Keane, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1995)). Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996) (citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (noting that summary judgment may not be granted if the evidence is "merely colorable" or "not significantly probative"). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 n. 14 (2d Cir.1981) (quotation marks omitted).

DISCUSSION

Plaintiff asserts that she is entitled to one-half of the net proceeds from the sale of the Property that she and her sister owned as tenants in common. The sale's net proceeds, $1,080,254.23, were deposited in the Account.

A. Under New York law, there is a Presumption that Tenants in Common own Property in Equal Shares.

The New York Estates Powers and Trust Law § 6-2-2(a) provides that "a disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy." New York recognizes a presumption that when two or more persons own property as tenants in common, they hold equal shares of that property. Cary v. Fisher, 149 A.D.2d 890, 892-93 (3d Dep't 1989) (citing Bell v. Little, 204 A.D. 235, 238 (4th Dep't 1922), aff'd 237 N.Y. 519 (1923)). See also Clarke v. Clarke, 75 A.D.2d 836, 836 (2d

6

Dep't 1980) (upholding the equal division of proceeds from the sale of a property held by the parties as tenants in common); Secrist v. Secrist, 284 A.D. 331, 333-34 (4th Dep't 1954) (granting equal shares to husband and wife who held proceeds of sale as tenants in common even though husband purchased the property).

Here, plaintiff and defendant hold the Account as "Joint Tenants in Common," as identified by the Account Application Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number. (Pl. 56.1 ¶¶ 11, 12; Weiner Aff. Feb. 27, 2009, Exs. 1, 2, 7, 12). The money in the Account came from the 2005 sale of the Property. When the mother originally conveyed the Property to Acampora, Woods, and Ralph Acampora, her conveyance created a tenancy in common, under New York Estates Powers and Trust Law § 6-2-2(a). Subsequently, Ralph conveyed title to his share of the property by deed to plaintiff and defendant. (Pl. 56.1 ¶ 4; Weiner Aff. Feb. 27, 2009, Exs. 7, 8). This subsequent conveyance established the Property as a tenancy in common between Acampora and Woods.

Acampora acknowledged this joint ownership of the Property: she signed a Property Owner's Registration Form for filing with the New York City Department of Finance on March 26, 2002, and identified both Acampora and Woods as "owner" of the Property (Pl. 56.1 Stmt. ¶ 5; Weiner Aff. Feb. 27, 2009, Exs. 7, 8).

B.  The Presumption that a Tenancy in Common is Shared Equally may be Overcome.

"While there is a presumption that tenants in common share equally in their common tenancy, such a presumption is rebuttable if the facts show that they hold in different shares." Johnson v. Depew, 33 A.D.2d 645, 645 (4th Dep't 1969) (granting plaintiff's intestate in a partition proceeding more than half a share of a property held between parties as tenants in

7

common where plaintiff paid a greater share of the purchase price, mortgage, and tax payments). See also Goldberg v. Goldberg, 173 A.D.2d 679, 680 (2d Dep't 1991); Moran v. Thomas, 280 A.D. 1037, 1038 (4th Dep't 1952).

Acampora now asserts that Ralph conveyed his one-third share to her alone, and not to the two sisters in equal shares. Acampora does not support this statement with evidence. Mere "conclusory allegations," do not rebut the presumption that a tenancy in common is to be shared equally. See Clarke, 75 A.D.2d at 836 ("Plaintiff's conclusory allegation that the property had been considered his alone would not rebut [a] presumption [that a tenancy in common is to be shared equally].") Acampora states that she is prepared to subpoena her brother. But, after a full and fair opportunity to conduct discovery, the period for discovery now is closed. As previously expressed, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and "a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Odom, 1997 WL 576088, at *3. Moreover, Acampora reported only $600,000, half of the gross proceeds from the sale of the joint property, on her 2005 Income Tax Return (Pl. 56.1 ¶ 13; Weiner Aff. Feb. 27, 2009, Ex. 7, 19). Her tax reporting position is inconsistent with her claim of two-third ownership.

Acampora also claims that she made offsetting expenditures for which she should receive credit. Beyond conclusory statements in her affirmations, Acampora has submitted no evidence to support the statements. The plaintiff has submitted Acampora's deposition at which she was examined about checks totaling $6,933 relating to a lawsuit that Acampora states arose out of a property dispute with a neighbor; checks that were drawn by Acampora on her own

8

account. (Weiner Aff. April 17, 2009, Exs. 1, 3.) This evidence is sufficient to create a triable issue of fact as to her entitlement to one-half of the legal fees, $3,466.50.

Acampora also claims that she gave money to plaintiff over many years to support plaintiff's family (Affirmation of April 6, 2009) ("I too played an important role in support of Plaintiff's children . . . .") At her deposition, she was examined about checks, not drawn on the Account, totaling $14,146.52, which Acampora asserted were paid to Woods or paid to a third party for the benefit of Woods and her family. (Weiner Aff. April 17, 2009, Exs. 1, 2.)[1] Acampora further notes that she gave Woods $7,000 for the purchase of a home in Blue Bell, PA in 1976. See Weiner Aff. April 17, 2009, Ex. 2. Acampora has failed to come forward with evidence, which if believed, would permit a reasonable jury to find in her favor on the $20,146.53 or the $7,000. Acampora had a full and fair opportunity to conduct discovery. At her deposition, Acampora acknowledged that Woods and Acampora never discussed whether these payments were loans. (Weiner Aff. April 17, 2009, Ex. 1.) The checks and the statement that the money benefited Woods or Woods' family would not, standing alone and without more, permit a reasonable jury to find in her favor on these payments or any other payment. No other payment is supported by anything other than conclusory assertions.

Woods asserts that any offset in Acampora's favor ought to be further balanced against the value of Acampora's occupancy of the Property. "[I]t [is] within the power of the [court] to offset, as against defendant's credit for expenses incurred in maintaining the property, reasonable value of his use and occupancy thereof." Yancey v. Yancey, 52 A.D. 603, 603 (2d Dep't 1976). Here, Woods answers that Acampora lived in their joint property for her whole life without paying rent. (Woods Aff. April 18, 2009). At any trial of the matter, the trier of fact

---

[1] Woods presents five checks: $2,585 to Mount St. Joseph Academy, $6,573.61 to Fordham University, $7,423.92 to Edith Woods, and 2 checks of $1,782 each to Pace University. The total of these checks equals $14,146.52.

would be permitted to offset any expenses against the "reasonable value" of Acampora's use of the property.

## CONCLUSION

Woods has moved for summary judgment on the first claim for relief, which is a claim for declaratory judgment. Woods is and has been one-half owner of the Account, since the time of the brother's transfer of his interest on February 12, 2002. By reason of that conclusion, she is entitled to one-half of the present proceeds of the Account. Woods is also entitled to one-half of the amount withdrawn from the Account by Acampora less any payment by Acampora to Woods.

As described above, in April, 2006, Citigroup issued a check from the Citigroup account to "Ms. Marguerite and Edith A. Woods Ten in Com," in the sum of $373,000. As defendant admits, she endorsed both her own and Woods' name, and deposited the check into her personal checking account. Acampora later re-paid $150,000 to Woods, but Acampora used the remainder for her personal income tax and accounting fees. (Pl. 56.1 ¶ 14, 15; Weiner Aff. Feb. 27, 2009, Exs. 1, 7, 13, 16.) Also, in March 2007, $300,000 was wired from the Account to Acampora, which Acampora used for the purchase of a cooperative apartment in her own name and for her personal use. (Pl. 56.1 Stmt. ¶ 17; Weiner Aff. Feb. 27, 2009, Exs. 16, 17.)

The undisputed evidence establishes plaintiff's entitlement to one-half of $673,000, i.e. $336,500, less $150,000 Woods acknowledges she was paid, a net figure of $186,500. But, there is a disputed issue of fact, described above, as to the sum of $3,466.50, one-half of the legal fees relating to the Property. Thus, plaintiff is entitled to partial summary

10

judgment in her favor that she is the owner of one-half of the Account plus $183,033.50 ( i.e. $186,500 less $3,466.50).

Pursuant to Fed.R.Civ.P. 56(d), plaintiff's motion for partial summary judgment on her first claim for relief is granted in part and denied in part. The balance of plaintiff's claim under the first claim (representing the sum of $3,466.50) and plaintiff's remaining two claims for relief (accounting and breach of fiduciary duty) remain to be tried.

SO ORDERED.

                                      _____
                                      P. Kevin Castel
                                      United States District Judge

Dated: New York, NY
       June 23, 2009

11